IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TORRANCE CAERY                                                    PETITIONER

v.                              Case No. 6:14-cv-06106

WENDY KELLEY, Director,                                          RESPONDENT
Arkansas Department of Correction


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner is Torrance Caery ("Caery") who is proceeding *pro se*. Caery is incarcerated at the Arkansas Department of Correction, Ouachita River Unit in Malvern, Arkansas. On September 12, 2014, Caery filed this Petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent was served with a copy of the Petition and has responded to it. ECF No. 8. Caery has also filed a Reply in support of his Petition. ECF No. 9. The Petition was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case. The Court has reviewed the Petition, Response, Reply, and all exhibits submitted in this case and finds as follows:

1.   **Procedural Background**:[1]

On October 19, 2011, a jury sitting in Pulaski County, Arkansas found Caery guilty of one count of aggravated residential burglary and two counts of first degree battery. ECF No. 1. On October 19, 2011, a judgment was entered against Caery sentencing him to 1320 months or 110 years imprisonment in the Arkansas Department of Correction. *Id.* Caery appealed his conviction to the Arkansas Court of Appeals. ECF No. 8-3. On October 24, 2012, the Arkansas Court of Appeals

---

[1]The procedural background is taken from the Petition, Response, Reply, the attached exhibits, and matters of public record regarding this case.

entered a judgment affirming Caery's conviction. *Id. See Caery v. State of Arkansas,* 2012 Ark. App. 583, at 4, 2012 WL 5327212, at 7 (2012).

On December 12, 2012, Caery filed a Rule 37 Petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. ECF No. 8 at 3. This Rule 37 Petition was denied without a hearing. Caery then timely appealed to the Supreme Court of Arkansas. ECF No. 8-7. On May 22, 2014, the Supreme Court of Arkansas dismissed Caery's appeal. *Id. See Caery v. State of Arkansas,* 2014 Ark. 247, at 3, 2014 WL 2158140, at 5 (2014).

On September 12, 2014, Caery filed the current Petition. ECF No. 1. With this Petition, Caery makes the following claims:

1.   His trial counsel was ineffective because he failed to object to potential jurors "who were victims of crimes and did not answer truthfully in voire dire [*voir dire*]";

2.   His constitutional rights were violated by his trial attorney's reference to his "prior [criminal] history" during his trial counsel's opening statements;

3.   His constitutional rights were violated by the trial court's overruling a relevancy objection made during the prosecution's examination of prosecution witness Alden Hill;

4.   His constitutional rights were violated by his trial counsel's failure to impeach Alden Hill with a prior inconsistent statement he made under oath;

5.   His constitutional rights were violated by his trial counsel's failure to object to prosecution witness Johnny Green's testimony as "perjured testimony"; and

6.   His constitutional rights were violated by his trial counsel's ineffectiveness "by not objecting to prosecution's inference (and or reference statement) to defendant's right not to testify in State's closing argument."

*Id.* at 1-11.

On October 31, 2014, Respondent filed a Response to Caery's Petition. ECF No. 8. In this response, Respondent admits this Petition was timely filed. However, Respondent argues these claims are likely procedurally barred, and all of Caery's claims should be dismissed because they

"plainly lack merit."  *Id.* at 5.  Respondent then details how each claim is meritless.  *Id.* at 5-12.

2.    **Discussion**:

       Caery raises six grounds for relief.  ECF No. 1.  The Court will address each of these grounds on the merits[2] and will assume this Petition was timely filed.

       As an initial matter, the Court will first consider the standard for demonstrating his trial counsel was ineffective.  Caery raises six different claims, five of which are claims of ineffective assistance of counsel.

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to prevail on an ineffective assistance of counsel claim, under *Strickland*, a movant must show: (1) his "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence," and (2) "the deficient performance prejudiced [his] defense."  *See Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quoting *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir.1995)).  When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy."  *Toledo*, 581 F.3d at 680 (quoting *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996) (citing *Strickland v. Washington*, 466 U.S. at 689)).  "The burden of proving ineffective assistance of counsel rests with the defendant."  *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003)(citing *United States v Cronic*, 466 U.S. 648, 658 (1984)).

       Under the first prong of the *Strickland* test, the Court must consider counsel's performance

---

[2]Because the Court finds these claims are meritless, there is no need to address procedural default.

objectively and gauge whether it was reasonable "under prevailing professional norms" and "considering all the circumstances." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (citations omitted). The Court should examine counsel's challenged conduct at the time of his representation of the defendant and avoid making judgments based on hindsight. *See id.* There is typically no basis for finding a denial of effective counsel unless a defendant can show specific errors that "undermined the reliability of the finding of guilt. . . ." *White,* 341 F.3d at 678. If, however, "counsel completely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights making the adversary process presumptively unreliable [and no showing of prejudice is required]." *See id.*

If the Court finds deficient counsel and thus must consider the second prong, prejudice, a defendant must establish "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice can only be found if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992). The Court will now address the six claims Caery raises.

### A.    Jury Selection

Caery claims he is entitled to relief under 28 U.S.C. § 2254 because his trial counsel allowed "victims of crimes" and individuals who did not answer truthfully during *voir dire* to remain on the jury. ECF No. 1 at 3. In support of his claim, Caery has supplied twelve pages of *voir dire* questioning wherein his attorney questioned perspective jurors about whether those jurors had been crime victims. ECF No. 1 at 20-31. Of those jurors, only one ("Ms. Hayes") stated she did not believe she could be fair if she sat on Caery's jury. *Id.* Due to that fact, the trial court struck her for

cause.  *Id.* at 28-29.  All of the other jurors (including crime victims) stated they believed they could be fair if they served on his jury.  *Id.* at 20-31.

When raising a claim of juror bias, a petitioner must make two required showings: (1) the juror must have failed to disclose a material fact during *voir dire;* and (2) that juror must in fact be biased.  *See Fuller v. Bowersox,* 202 F.3d 1053, 1056 (8th Cir. 2000) (addressing this issue in the context of a 28 U.S.C. § 2254 petition).  Here, even assuming some of these jurors failed to disclose the material fact that they were crime victims (which appears *did not* happen), Caery has still not shown these jurors were actually biased.  Indeed, every juror questioned (apart from the one juror excused for cause) stated he or she would not be biased.  ECF No. 1 at 20-31.  Thus, because Caery has provided absolutely no evidence demonstrating he can meet the standard required by *Fuller,* the Court finds this claim is meritless and should be dismissed.

### B.    Opening Statements

Caery claims his trial counsel was ineffective because he mentioned Caery's "prior [criminal] history" during his opening statements.  ECF No. 1 at 4.  Caery claims such a statement by his trial counsel "was more prejudicial than probative" and "led to an unfair and partial trial."  *Id.*  In support of his claim, Caery has attached the trial transcript which contains his trial counsel's opening statements.  ECF No. 1 at 35-36.  The relevant portion provides as follows:

> Ladies and gentlemen, I understand and thank you for giving us your time today to hear this case.  This is a serious case, and I want you to hear all of the evidence.  *I do anticipate there will be evidence of drug use and past drug history.*  And, I want you to listen to all the parts of this and see the entire picture.

*Id* (emphasis added)*.*

As an initial matter, it is entirely unclear whose "drug use and past drug history" his trial counsel was referencing.  Indeed, based upon the context and after reviewing the trial transcript, it

appears the "drug use" and "drug history" he was referencing was prosecution witness Alden Hill's drug use on the night of the crime. During his cross-examination of Mr. Hill, Caery's trial counsel thoroughly explored this issue. ECF No. 8-1 at 228-229. The following exchange took place between Caery's trial counsel and Mr. Hill:

> Q:    Mr. Hill, is that in fact a copy of the statement you gave police that night?
>
> A:    Yes, it is.
>
> Q:    And, there's no reference at any point in that statement you having seen Shimberly [one of the victims] fall to the ground, you haven't seen anything in the rearview mirror.
>
> A:    No, it's not in here.
>
> Q:    And, you just told the prosecutor a few moments ago that you told police everything that night. But, now eighteen months later roughly you're telling us that you saw something that night *while you're under the influence of PCP* that you didn't remember right then.
>
> A:    Okay, yes.

*Id.* (emphasis added). Indeed, Caery has presented no argument demonstrating his trial counsel was in any way actually referring to *his* drug use. ECF No. 1 at 4. Based upon this information, the Court finds no basis for Caery's argument and recommends his request for *habeas* relief based upon this claim be denied.

### C.    Trial Counsel's Relevancy Objection

Caery argues the trial court erred when it overruled a relevancy objection his trial counsel made during Mr. Hill's testimony. ECF No. 1 at 4-5. This is not a claim of ineffective assitance of counsel. Specifically, Caery claims Mr. Hill testified during the trial about the morning after the shooting. ECF No. 1 at 37-38. Caery's trial counsel objected to this testimony, claiming it was not

relevant to the criminal proceedings against Caery.[3]  *Id.*  The trial court overruled that objection.  *Id.*  Caery now claims the trial court's overruling this objection was in error, and he is entitled to *habeas* relief on this issue.  *Id.*

Upon review, the Court finds no error with the trial court's decision to admit this evidence.  Even though this testimony related to events that occurred the morning after the crime, under Arkansas law, evidence such as this is admissible to explain the events surrounding the alleged crime and the events which ultimately led to Caery's arrest.  *See Thessing v. State of Arkansas,* 365 Ark. 384, 394-95, 230 S.W.3d 526, 535-36 (2006) (affirming the admission of drug use after the crime was committed and finding it to be admissible as part of the *res gestae* of the crime).  As the *Thessing* court held, "we consider the *broad scope* of evidence admissible as *res gestae* evidence under our case law" and "we have held that *all of the circumstances intermingled with a particular crime may be shown for that purpose." Id.* (emphasis added).  Thus, the Court finds the trial court did not error in overruling this relevancy objection.

### D.    Mr. Hill's Prior Inconsistent Statement

Caery argues his trial counsel was ineffective because he did not impeach Mr. Hill, a prosecution witness, on a prior inconsistent statement.  ECF No. 1 at 6-7.  The prior inconsistent statement Caery references is actually an omission by Mr. Hill as to whether he saw one of the victims, Shimberly, fall in his rearview mirror.  *Id.*  In a prior statement, he *did not* reference seeing her fall.  *Id.*  During his testimony at the trial, he testified he *did* see her fall.  *Id.*

Upon review of the trial transcript, Caery is simply incorrect in this claim.  Indeed, Caery's

---

[3]Presumably, that testimony was not relevant because it related to the events that occurred *after* the crime was committed.

trial counsel *did impeach* Mr. Hill on his prior inconsistent statement.  The relevant portion of the

transcript is as follows:

> Q:      . . . And, you made a statement to police officers oh about midnight, 12:15
>         that night?
>
> A:      Yes, sir.
>
> Q:      Okay.  And, do you remember making that statement?
>
> A:      I do remember writing that statement, yes, I do.
>
> Q:      Okay.  And, do you remember having made that statement?  I believe you
>         stated that you earlier in testimony that you looked in the rearview mirror and
>         you saw Shimberly fall?
>
> A:      Yes, sir, I did.
>
> Q:      Okay.
> . . .
>
> Q:      Mr. Hill, I'm showing you a copy of the statement you gave to the police that
>         day?  Can you look through there and tell me where you told the police that
>         you looked in the rearview mirror and that you saw Shimberly fall, that you
>         saw anything at that point?
>
> A:      [No verbal response]
>
> Q:      Mr. Hill, is that in fact a copy of the statement you gave police that night?
>
> A:      Yes, it is.
>
> Q:      And there's no reference at any point in that statement you having seen
>         Shimberly fall to the ground, you haven't seen anything in the rearview
>         mirror.
>
> A:      No, it's not in here.

ECF No. 1 at 39-40.  Thus, because Caery's trial counsel *did impeach* Caery with his prior

inconsistent statement on this issue, the Court finds no basis for granting *habeas* relief.

### E.    Mr. Green's "Perjured Testimony"

Caery claims his trial counsel was ineffective by failing to object to "perjured testimony" of prosecution witness, Johnny Green.  ECF No. 1 at 7-8.  Specifically, Mr. Green, family member of the victims, testified Caery "kicked in" the door to their house while Caery pursued them. *Id.* at 48. It appears, however, based upon other trial testimony and photographic evidence, that the door may not have been "kicked in."[4] *Id.* 49-50.  Caery claims his counsel was ineffective for failing to object to Mr. Green's "perjured testimony" regarding the "kicked in" door.  *Id.* at 7-8.

As with the other claims, the Court finds no basis for *habeas* relief on this issue.  Even if Mr. Green's recollection of the events was incorrect, that fact does not demonstrate his testimony was "perjured."  Further, his counsel was certainly not ineffective in failing to object to this testimony. Instead of objecting, Caery's trial counsel introduced pictures demonstrating Mr. Green's memory might have been faulty, and the door might not have been "kicked in."  Certainly such evidence would undermine the credibility and reliability of the prosecution's witness, Mr. Green, which would bolster Caery's case and would not be ineffective assistance of counsel.  Thus, the Court finds no basis for *habeas* relief on this issue.

### F.    Inference Regarding Caery's Failure to Testify

Caery claims his trial counsel was ineffective because he failed to object to the prosecution's statements during closing arguments referencing Caery's failure to testify in his own defense.  ECF No. 1 at 8-9.  Upon review of Caery's claim, he objects to the following statements made by the prosecutor:

---

[4] During his trial, Caery's trial counsel questioned the photographer about the door and asked if she would have taken a photograph of the door if it had been "kicked in," and she responded that she would have.  She, however, testified that she *did not* take a picture of the door, which indicates the door was not important to the investigation and had not been "kicked in."  ECF No. 1 at 49-50.

> Defense attorney also brings up that this was [not on] purpose. Ladies and gentleman, either he shot him or he didn't shoot him. There's been no testimony that this was an accident, that the gun accidentally went off or that Torrance Caery tripped and fell and he dropped the gun, and the gunshot went in Shirley's head. No.

ECF No. 8-2 at 69-70. While Caery is correct that a prosecutor cannot comment at trial "directly or indirectly, on the defendant's failure to testify," to qualify as such an "indirect" reference, the standard is the "jury naturally would have understood them as a comment on [the] defendant's failure to testify." *United States v. Porter,* 687 F.3d 918, 922 (8th Cir. 2012) (internal citation and quotation marks omitted).

In this case, there is no indication the jury would "naturally" understand these statements as referencing Caery's failure to testify in his own defense. Indeed, in Caery's case, several witnesses, including Mr. Green and Mr. Hill, testified regarding the circumstances surrounding the crime, and the prosecutor's statements were more likely directed at this witness testimony, not Caery's failure to testify in his own defense. Notably, the prosecutor continued as follows:

> The testimony was that he had the gun, he pointed it at Shirley [one of the victims], and he pulled the trigger. That is purpose.
>
> . . .
>
> You also have the testimony of Shimberly saying that after he shot Shirley, he turned, she's trying to flee back into the haven as well. She's got her baby on her hip. And, what does he do? He points the gun at her and pulls the trigger again. If it was an accident, you think the accident would probably stop after the first one? I would think so. Or if he's being reckless you think that would stop after the first accident when he's shooting Shirley, but it didn't. He chose to go on to get rid of the two people that saw him shooting inside the house. And that was his intent, right? To get rid of them.

ECF No. 8-2 at 70. Based upon this information, the Court finds Caery's claim on this issue is also without merit, and he is not entitled to *habeas* relief on this claim.

-10-

3.      **Recommendation**:

Based upon this review, the Court finds none of Caery's claims entitle him to relief under 28 U.S.C. § 2254.  Accordingly, based on the foregoing, it is recommended that the instant Petition be denied and dismissed with prejudice.[5]   I also recommend any request for a Certificate of Appealability be **DENIED**.

**The Parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The Parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**  *See  Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**DATED this 19th day of February 2016.**


 /s/ Barry A. Bryant_____
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

---

[5] "A federal court may dismiss a claim without an evidentiary hearing where the allegations are frivolous, where the allegations fail to state a constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record." *Urquhart v. Lockhart, 726 F.2d 1316, 1318-19 (8th Cir.1984).*

-11-